UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH YOUNG,

     Petitioner,

v.

SHERMAN CAMPBELL,

     Respondent.

CASE NO. 4:23-cv-13254

HON. SHALINA D. KUMAR

MAG. JUDGE KIMBERLY
G. ALTMAN

---

## ANSWER IN OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS

**TABLE OF CONTENTS**

Introduction ................................................................................. 1

    Statements in Compliance with Habeas Rule 5(b) ......................... 4

        A.    Statute of Limitations ............................................... 4

        B.    Exhaustion ................................................................ 4

        C.    Procedural Default ................................................... 4

        D.    Non-retroactivity Doctrine ...................................... 4

Statement of the Case ................................................................. 5

        A.    Trial Facts ................................................................ 5

        B.    Procedural History .................................................. 8

Standard of Review Pursuant to AEDPA .................................... 11

Argument ................................................................................... 18

I.    Young's claim that his Sixth Amendment right to counsel
    was violated by the admission of his communications with
    his pretrial counsel has not been exhausted in state courts
    and plainly lacks merit.  Further, Young's evidentiary
    challenges to the admissibility of the police interrogation are
    rooted in state law such that they are not cognizable on
    habeas review, and in any event, the state appellate court
    reasonably denied Young's claims. ....................................... 18

        A.    Young did not exhaust his state-court remedies for his
            claim that his Sixth Amendment right to counsel was
            violated by the admission of his communications with
            his pretrial counsel. ............................................... 19

        B.    Young is not entitled to habeas relief even if this Court
            excuses or otherwise bypasses the exhaustion problem
            because Young's Sixth Amendment right to counsel

had not attached at the time of his police interrogation, and even if it had, he fails to establish prejudice.................25

C.    Young's challenge to the admission of Detective White's comments during the police interrogation is a state-law claim that is not cognizable on habeas review, and in any event, the state appellate court reasonably denied that claim. ...............................................................................33

II.    The state appellate court reasonably denied Young's claim that he was deprived of his right to an impartial jury.................39

A.    The state appellate court's decision.....................................39

B.    Clearly established federal law regarding the right to an impartial jury. ...............................................................45

C.    Analysis .................................................................................46

Conclusion ........................................................................................49

Relief..................................................................................................54

Certificate of Service ........................................................................55

## INTRODUCTION

Petitioner, Kenneth Young, was the sole tenant in a building full of vacant apartments.  Young returned to his apartment to find the door ajar.  When Young tried to enter, he was met with resistance and heard a man inside tell him to back away.  Young removed his handgun from his waistband, backed away from his apartment, and went outside to call his father and cousins for assistance.  Once his family arrived, Young gave his father his handgun, grabbed his AR-15 from his vehicle, fired a warning shot in the air, and entered his apartment but found no one there.  Young then kicked down the doors to the other apartments to search for the intruder, eventually finding the victim, who was squatting in a vacant apartment.  Young's family members held the victim at gunpoint while Young searched the apartment.  Finding nothing, Young went outside to talk to a neighbor.  While Young was outside, his father fatally shot the victim.  Young grabbed a few items from his apartment and fled.

Later, Young and his family devised a false story in which Young would say he shot the victim in self-defense.  Young, with the presence of pretrial counsel, voluntarily met with police to discuss the incident.

1

After police confronted Young with facts contradicting his self-defense story, Young requested a meeting with his pretrial counsel, during which time Young admitted he lied to protect his father and deleted information from his cell phone.  Young ultimately told police he gave his father the gun that was used to kill the victim.  A jury convicted Young of second-degree murder, Mich. Comp. Laws § 750.317, on a theory of aiding and abetting, Mich. Comp. Laws § 767.39; possession of a firearm during the commission of a felony (felony-firearm), Mich. Comp. Laws § 750.227b; and tampering with evidence in a criminal case; Mich. Comp. Laws § 750.483a(5)(a) and (6)(b).

As a result of his Wayne County jury-based convictions, the State now holds Young in custody in the Michigan Department of Corrections. Young is currently serving concurrent sentences of 15 to 30 years for the murder conviction and 1 to 10 years for his tampering with evidence conviction, which are consecutive to his two-year sentence for his felony-firearm conviction.

2

Young commenced this action under 28 U.S.C. § 2254 by filing a petition with this Court.  The State understands the petition to be raising the following claims:

> I.  Young was denied his Sixth Amendment right to counsel where the trial court admitted communications between Young and his pretrial counsel in violation of the attorney-client privilege.   Further, the trial court abused its discretion by admitting those privileged communications and police statements during the interview that improperly opined on Young's credibility.
>
> II.  Young was denied his Sixth Amendment right to an impartial jury where the trial court failed to excuse a biased juror for cause.

Should the Court interpret the petition to be raising different claims, the State requests an opportunity to file a supplemental pleading.  To the extent that Young failed to raise any other claims that he raised in the state courts, those claims are now abandoned.  *See Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003) (holding that an issue is abandoned if a party does not present any argument respecting the issue in his brief).  Thus, habeas review of abandoned claims is barred.

The State now answers the petition and requests that it be denied.

3

## STATEMENTS IN COMPLIANCE WITH HABEAS RULE 5(b)

With respect to the bars that preclude habeas review, the State asserts the following in conformance with Habeas Rule 5(b):

### A.    Statute of Limitations

The State is not arguing that any of Young's habeas claims are barred by the statute of limitations.

### B.    Exhaustion

The State asserts that Young has not exhausted portions of Claim I (violation of Sixth Amendment right to counsel) in the state courts as more fully discussed below.

### C.    Procedural Default

The State is not arguing that consideration of any of Young's habeas claims is barred by an unexcused procedural default.

### D.    Non-retroactivity Doctrine

The State is not arguing that consideration of any of Young's claims is barred by the non-retroactivity doctrine.

## STATEMENT OF THE CASE

### A.    Trial Facts

The Michigan Court of Appeals accurately summarized the facts

adduced at trial as follows:

> On November 29, 2018, defendant [Kenneth Young]
> left his apartment for a brief period, before returning home.
> When he arrived, he noticed his door was ajar and suspected
> someone might be inside. When defendant attempted to
> push his door open, he felt some resistance and heard
> someone tell him to get back. Defendant fled the unit of his
> apartment building and called Kenneth Gibson[1] for
> assistance. While awaiting Kenneth Gibson's arrival,
> defendant patrolled the outside of his apartment unit with
> his gun. Defendant even fired one shot into the air,
> purportedly as a warning to the person he found in his
> apartment.
>
> Eventually, Kenneth Gibson was dropped off by
> someone driving a white car. Security camera footage from a
> nearby liquor store and restaurant showed Kenneth Gibson
> getting out of the car, crossing the street to speak with
> defendant, and defendant going to his car and opening the
> trunk. In a later interview with police, defendant stated he
> retrieved another gun from his trunk, gave one of the loaded

---

[1] As noted, Gibson is Young's father.  According to the Michigan Court of Appeals opinion, the two were tried together, although each had a separate jury. *People v. Young*, No. 351793, 2021 WL 6066786, at *1, n.3 (Mich. Ct. App. Dec. 21, 2021).  Gibson was convicted of second-degree murder; felon-in-possession of a firearm, Mich. Comp. Laws 750.224f; lying to a peace officer regarding a material fact during a criminal investigation, Mich. Comp. Laws 750.479c(1)(a) and (2)(d); and two counts of felony-firearm.  Gibson died in prison while his direct appeal was pending.

guns to Kenneth Gibson, and kept one for himself. Defendant and Kenneth Gibson remained outside until defendant's cousins, Robert Gibson and Ebonique Gibson, arrived in a gray minivan, which is visible on the security camera footage.

According to defendant, all four individuals then went inside defendant's unit of the apartment building, which contained four separate apartments. Defendant checked his apartment first, which no longer had anyone inside, and defendant did not notice anything missing. Defendant and his family members then went door-to-door trying to find the person who had been in defendant's apartment, kicking all three other apartment doors in the unit. One of the doors broke open, but revealed no one inside. When they reached the apartment in which the victim was squatting, the victim answered his door in response to defendant's kick.

Defendant and his family members held the victim at gunpoint while defendant walked through the victim's apartment, looking for anyone else inside or anything that might have been taken from defendant's apartment. Defendant noticed his neighbor, Mr. Cass, arriving home at the time. Defendant went outside to speak with Cass, hoping to assure him everything was fine. While outside, defendant heard a gunshot inside the apartment, which was Kenneth Gibson fatally shooting the victim with the gun provided by defendant.

The victim fled, jumped out of the window in his apartment, and ran across the street to Spotlight Liquor Store. The victim later died from the gunshot wound. Defendant told police he heard from Kenneth Gibson that the victim had been shot. Defendant responded by removing his television and PlayStation video game console from his apartment, stowing his gun in his trunk, and driving away. Defendant, Kenneth Gibson, Robert, and Ebonique all met up at a separate location and decided they would create a false story and lie to the police.

6

> Defendant initially told police he had an altercation with the victim when defendant first noticed someone was inside his apartment. Only after being confronted with law enforcement's knowledge of significant facts gleaned from the surveillance footage and evidence inside the apartment building did defendant relay the version of facts summarized above. And even while in the interrogation room with his pretrial counsel, defendant deleted probative information from his cell phone.
>
> The jury found defendant guilty of second-degree murder and felony-firearm on a theory of aiding and abetting, and guilty of destruction of evidence for deleting relevant information from his cell phone.

*People v. Young*, No. 351793, 2021 WL 6066786, at *1–2 (Mich. Ct. App. Dec. 21, 2021).  This recitation of the facts is entitled to the presumption of correctness under § 2254(e)(1), and Young has not demonstrated through clear and convincing evidence that this summary is incorrect.

The presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records.  *Treesh v. Bagley*, 612 F.3d 424, 430 n.1 (6th Cir. 2010); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001) (citing *Sumner v. Mata*, 449 U.S. 539, 546–47 (1981)).

The State opposes any factual assertions made by Young that are not directly supported by—or consistent with—the state court record,

because Young has failed to overcome the presumption of factual correctness under 28 U.S.C. § 2254(e)(1) or meet the requirements of 28 U.S.C. § 2254(e)(2).

## B.    Procedural History

Young was convicted of second-degree murder on an aiding-and-abetting theory, felony-firearm, and tampering with evidence.  The trial court sentenced him to concurrent sentences of 15 to 30 years for the murder conviction and 1 to 10 years for his tampering with evidence conviction, consecutive to a two-year sentence for his felony-firearm conviction.

Following his conviction and sentence, Young filed a claim of appeal in the Michigan Court of Appeals, which raised the following claims:

I.    The evidence was insufficient to support the conviction of second degree murder.

II.    Defendant was denied the effective assistance of trial counsel.

III.    The trial court committed reversible error by admitting the video interview of the defendant.

IV.    The trial court erred by instructing the jury on flight.

V.    The trial court erred by requiring trial counsel to use a peremptory challenge to dismiss a juror and not for cause.

In addition to counsel's brief on appeal, Young filed a Standard 4 supplemental brief on his own behalf, wherein he raised the same claims as his counsel, as well as additional claims that are not the subject of this habeas petition.

The Michigan Court of Appeals affirmed Young's convictions in an unpublished opinion. *Young*, 2021 WL 6066786, at *2–23.

Young subsequently filed an application for leave to appeal in the Michigan Supreme Court, which raised the following claims:

I.    The trial court abused its discretion by admitting parts of the police interview video showing privileged attorney-client communications between Defendant Young and his pretrial attorney and by admitting the parts showing multiple instances where the police attack Young's credibility throughout the interview in violation of Young's Right to Counsel under the Sixth and Fourteenth Amendments to the U.S. Constitution.

II.    The trial court abused its discretion by refusing to excuse a biased juror for cause in violation of Young's right to an impartial jury under Sixth and Fourteenth Amendments to the U.S. Constitution.

In addition to counsel's application for leave to appeal, Young filed a Standard 4 supplemental brief, wherein he raised a claim that is not the subject of this habeas petition.  The Michigan Supreme Court

9

denied the application because it was not persuaded that the questions

presented should be reviewed by the Court. *People v. Young*, 982

N.W.2d 389 (Mich. 2022) (unpublished table decision).

Young did not appeal to the United States Supreme Court or seek

collateral review before the trial court. Rather, he filed the instant

petition for habeas relief.

10

## STANDARD OF REVIEW PURSUANT TO AEDPA

Review of Young's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). AEDPA prevents a federal court from granting habeas corpus relief based on any claim "adjudicated on the merits" in state court, unless the petitioner can establish that the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d)(1), the petitioner must establish that "the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or . . . decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Metrish v. Lancaster*, 569 U.S. 351, 357 n.2 (2013) (internal quotation marks and citation omitted).

11

Under the "unreasonable application" clause of § 2254(d)(1), the petitioner must establish that, after "identif[ying] the correct governing legal principle from the Supreme Court's decisions, [the state court] unreasonably applie[d] that principle to the facts of [his] case." *Hill v. Curtin*, 792 F.3d 670, 676 (6th Cir. 2015) (en banc) (alteration omitted). "[T]he state court's decision must have been more than incorrect or erroneous[;]" rather, it must have been "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (quoting *Wiggins v. Smith*, 539 U.S. 510, 520–521 (2003)). "[E]ven 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014).

In other words, the state court's determinations of law and fact must be "so lacking in justification" or "so obviously wrong" as to give rise to error "beyond any possibility for fairminded disagreement." *See Dunn v. Madison*, 583 U.S. 10, 14 (2017) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)) and *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (per curiam).

If this rule is to mean anything, a federal court must carefully consider all the reasons and evidence supporting the state court's decision. *Mays v. Hines¸* 592 U.S. 385, 391 (2021).  "After all, there is no way to hold that a decision was lacking in justification without identifying—let alone rebutting—all of the justifications [for a state court decision].  Any other approach would allow a federal court to essentially evaluate the merits de novo by omitting inconvenient details from its analysis."  *Id.* at 391−392 (cleaned up).  All that is required to avoid federal habeas relief is "ample room for reasonable disagreement" about the prisoner's claim.  *Kayer*, 592 U.S. at 113.

As the Supreme Court has stated, "[i]n our dual-sovereign system, federal courts must afford unwavering respect to the centrality of the trial of a criminal case in state court.  That is the moment at which society's resources have been concentrated in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens.  [Federal court] intervention is also an affront to the State and its citizens who returned a verdict of guilt after considering the evidence before them.  Federal courts, years later, lack the competence

13

and authority to relitigate a State's criminal case." *Shinn v. Ramirez*, 596 U.S. 366, 390 (2022) (cleaned up).

Moreover, not just any Supreme Court decision will do under § 2254(d)(1). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta," of the Supreme Court's decisions. *Woods v. Donald*, 575 U.S. 312, 316 (2015) (per curiam) (internal quotations and citations omitted). Where no Supreme Court case has confronted "the specific question presented" by the habeas petitioner, "the state court's decision [cannot] be contrary to any holding from this Court." *Woods v. Donald*, 575 U.S. at 317 (internal quotation marks and citation omitted). Moreover, the Supreme Court decision must have been on the books at "the time the state court render[ed] its decision." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (internal quotation marks and emphasis omitted); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) ("State-court decisions are measured against [the Supreme] Court's precedents as of the time the state court renders its decision.") (internal quotation marks omitted); *see also Shoop v. Hill*, 139 S. Ct. 504, 505 (2019) ("the Court of Appeals relied repeatedly and extensively on our decision in *Moore v. Texas*, 581

14

U.S. ___ (2017), which was not handed down until long after the state court decisions" and was thus "plainly improper.")

"It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Richter*, 562 U.S. at 101 (internal quotation marks and citation omitted). As the Supreme Court has repeatedly pointed out, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'" *Kernan v. Cuero*, 583 U.S. 1, 8 (2017) (per curiam) (quoting *Glebe v. Frost*, 574 U.S. 21, 23 (2014)) (per curiam). Likewise, neither do "state-court decisions, treatises, or law review articles" constitute clearly established Federal law as determined by the Supreme Court. *Cuero*, 583 U.S. at 8.

Moreover, federal court of appeals precedent cannot "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 63 (2013) (per curiam) (citation omitted); *see also Lopez v. Smith*, 574 U.S. 1, 6 (2014) (providing that absent a decision by the Supreme Court addressing "the specific

15

question presented by [a] case" a federal court cannot reject a state court's assessment of claim).

Under § 2254(d)(2), the "unreasonable determination" subsection, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Wood v. Allen*, 558 U.S. 290, 293 (2010). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (internal quotation marks and citation omitted).

The Supreme Court has also instructed habeas courts to apply a rebuttable presumption that a "federal claim was adjudicated on the merits" even "[w]hen a state court rejects a federal claim without expressly addressing that claim." *Johnson v. Williams*, 568 U.S. 289, 301 (2013). *See also Kernan v. Hinojosa*, 578 U.S. 412, 416 (2016) (per curiam) ("Containing no statement to the contrary, the Supreme Court of California's summary denial of Hinojosa's petition was therefore on the merits.").

16

Finally, Young's burden is made even heavier by the fact that a federal court is "limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181.

## ARGUMENT

**I.     Young's claim that his Sixth Amendment right to counsel was violated by the admission of his communications with his pretrial counsel has not been exhausted in state courts and plainly lacks merit.  Further, Young's evidentiary challenges to the admissibility of the police interrogation are rooted in state law such that they are not cognizable on habeas review, and in any event, the state appellate court reasonably denied Young's claims.**

Young argues that his communications with his pretrial counsel at the police interrogation were protected by the attorney-client privilege such that the admission of those communications at trial violated his "Right to Counsel under the Sixth and Fourteenth Amendments to the US Constitution." (Pet. at 19.)  Young, however, has not fully exhausted that claim in state court.  In any event, that claim plainly lacks merit because Young's Sixth Amendment right to counsel had not attached at the time of the police interrogation and because Young fails to establish prejudice stemming from the alleged intrusion into his attorney-client relationship.

Young also argues, as an evidentiary matter, that the trial court abused its discretion by admitting his privileged communications with his pretrial counsel and by admitting statements that Detective Johnell White made during the police interrogation that opined on Young's

18

credibility. These evidentiary challenges are not cognizable on federal habeas review and lack merit in any event. Accordingly, Young is not entitled to habeas relief on this claim.

### A. Young did not exhaust his state-court remedies for his claim that his Sixth Amendment right to counsel was violated by the admission of his communications with his pretrial counsel.

Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To fulfill the exhaustion requirement, the prisoner must have fairly presented the federal claims to all levels of the state appellate system. *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995); *see also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."). "Fair presentation requires that the state courts be given the opportunity to see both the factual and legal basis for each claim." *Wagner v. Smith*, 581 F.3d 410, 414–15 (6th Cir. 2009). "It is not enough that all the facts necessary to

19

support the federal claim were before the state courts or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

Further, the petitioner is "required to make a specific showing of the alleged claim." *Wagner*, 581 F.3d at 415. "In order to satisfy this requirement, and avoid a procedural default, the petitioner's federal habeas petition must be based on the same theory presented in state court and cannot be based on a wholly separate or distinct theory." *Carter v. Mitchell*, 693 F.3d 555, 568 (6th Cir. 2012); *accord Williams v. Wolfenbarger*, 513 F. App'x 466, 469 (6th Cir. 2013) ("Accordingly, because the claim that Williams presented to the state courts was not argued under the same legal theory, as our precedent requires, we find that Williams's claim as it was presented to the district court for habeas review is unexhausted.").

At trial, Young moved to suppress the portions of the police interrogation that recorded his communications with his pretrial counsel on the grounds that the communications were protected under the attorney-client privilege. (09/02/2019 Pet'r's Mot. to Suppress and Br. in Supp.) Young's trial counsel primarily framed the issue as a

20

statutory violation, citing Michigan's codification of the attorney-client privilege, Mich. Comp. Laws § 767.5a(2), Michigan's eavesdropping statute, Mich. Comp. Laws § 750.539c, and the penalty for using or divulging information obtained in violation of eavesdropping statute, Mich. Comp. Laws § 750.539e. (*Id*. at 4–6.) But trial counsel also cited cases for the notion that government impingement of the attorney-client privilege may violate a defendant's Sixth Amendment right to counsel. *See Weatherford v. Bursey*, 429 U.S. 545 (1977); *State v. Taylor*, 49 N.E.3d. 1019 (Ind. 2016). (*Id*. at 6–9.) The trial court denied Young's motion to suppress the challenged portions of the police interrogation without specifically addressing the constitutional aspect of Young's claim. (09/04/2019 Trial Tr. at 15–16.)

On appeal to the Michigan Court of Appeals, Young did *not* frame the issue as a constitutional violation. Instead, Young's former appellate counsel argued that the trial court abused its discretion by admitting Young's communications with his pretrial counsel in violation of the codified attorney-client privilege and the eavesdropping statute. (Pet'r's Mich. Ct. Appeals Br. at 9–11.) Although Young's former appellate counsel cited *Weatherford*, 429 U.S. at 550–51—the case trial

21

counsel cited to support the Sixth Amendment right-to-counsel claim—

she cited *Weatherford* for a different purpose: to support the argument

that using or divulging information obtained in violation of the

eavesdropping statute is prohibited.   (*Id.* at 10–11.)   Young's former

appellate counsel did not cite *Weatherford* to support any claimed

constitutional violation, nor did she cite any constitutional provision to

support such a violation.   Indeed, her application of the abuse-of-

discretion standard of review demonstrates her intent to present the

issue as an evidentiary error rather than constitutional one.   (*Id.* at 9–

11.)   *See People v. Watkins*, 818 N.W.2d 296 (Mich. 2012) (reviewing

constitutional questions de novo and evidentiary rulings for an abuse of

discretion).   The Michigan Court of Appeals opinion also demonstrates

that Young did not fairly present the claim as a constitutional violation.

*See Young*, 2021 WL 6066786, at *7 (treating the issue as an

evidentiary matter and explaining that "nonconstitutional, preserved

evidentiary errors are not grounds for reversal unless they undermined

the reliability of the verdict") (quotation marks and citation omitted).

As discussed, failing to proceed with a claim under the same legal

theory throughout the state court proceedings is fatal in terms of satisfying the exhaustion requirement. *Carter*, 693 F.3d at 568.

Young's current counsel filed an application for leave to appeal in the Michigan Supreme Court, framing the issue in the same manner as his habeas petition. However, presenting a claim to only the Michigan Supreme Court on discretionary review is insufficient to exhaust it. *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

Finally, Young's Standard 4 supplemental briefs and pro se filings, filed in both state appellate courts, did not fairly present this issue so as to render it exhausted. In the Michigan Court of Appeals, Young argued, among other things, that his trial counsel should have raised an ineffective-assistance claim based on pretrial counsel's advice and performance during Young's police interrogation. (06/21/2021 Pet'r' Pro Se Mot. to Allow Additional Grounds for Appeal.) Young argued: "By failing to file [an] ineffective assistance of pretrial counsel [claim], . . . [Young] was denied effective assistance of trial counsel guaranteed by the United State Constitution [sic] Sixth Amendment." (*Id.* at 4–5.) Young's Sixth Amendment ineffective-assistance claim is separate and distinct from the Sixth Amendment right-to-counsel claim he now raises

23

in his federal habeas petition. *Carter*, 693 F.3d at 568. Young also filed a pro se supplemental brief to his application for leave to appeal in the Michigan Supreme Court, arguing that the written confession he gave during the police interrogation was involuntary and that its admission at trial violated due-process rights under the Fifth and Fourteenth Amendment. (02/15/2022 Pet'r's Pro Se Suppl. Br. to Appl.) Young's advancement of this entirely new legal theory does nothing to the exhaustion analysis.

In sum, Young's claim, that the admission of his communications with his pretrial counsel violated his Sixth Amendment right to counsel, has not been fully exhausted in the state courts as required by 28 U.S.C. § 2254(b)(1)(A).

A federal court sitting in habeas may not grant relief on *any* claim in a "mixed petition," i.e., a petition containing both exhausted and unexhausted claims. *See Rose v. Lundy*, 455 U.S. 509, 510 (1982) (citing 28 U.S.C. § 2254(b), (c)). The petitioner must either amend the petition to delete the unexhausted claims or accept dismissal without prejudice to pursue the unexhausted claims in state court. *Id.* A district court faced with a mixed petition must give the petitioner the

24

choice of exhausting the unexhausted claims by returning to state court, or abandoning the claims and pursuing the remaining claims in federal court. *Jefferson v. Budge*, 419 F.3d 1013, 1016 (9th Cir. 2005).

That said, this Court may deny a claim on the merits without considering exhaustion when it is more efficient to do so. 28 U.S.C. § 2254(b)(2) (stating that a habeas petition may be denied on the merits despite the failure to exhaust state court remedies); *see also Hudson v. Jones,* 351 F.3d 212, 215–216 (6th Cir. 2003). Because Young's claim plainly lacks merit, this Court may deny Young relief notwithstanding his failure to fully exhaust the claim in the state courts.

> **B.      Young is not entitled to habeas relief even if this Court excuses or otherwise bypasses the exhaustion problem because Young's Sixth Amendment right to counsel had not attached at the time of his police interrogation, and even if it had, he fails to establish prejudice.**

At the outset, it is important to note that the attorney-client privilege is not of constitutional proportions and that a violation of the privilege does not warrant federal habeas relief. *See Maness v. Meyers*, 419 U.S. 449, 466 n.15 (1975); *Sanborn v. Parker*, 629 F.3d 554, 575 (6th Cir. 2010) ("[T]he 'attorney-client privilege is a creation of the

common law, not the Constitution.'  As such, a violation of the attorney-client privilege is not *itself* a 'violation of the United States Constitution or its laws and treaties,' as is required by § 2254 before we may issue habeas on a given claim.") (alterations omitted), quoting *Lange v. Young*, 869 F.2d 1008, 1012 n.2 (7th Cir. 1989).  Moreover, Young's evidentiary challenge to the trial court's decision to admit his communication with his pretrial counsel is a matter of state law that is not cognizable on federal habeas review.  *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  His evidentiary challenge aside, Young's claim for habeas review hinges on his right to counsel under the Sixth and Fourteenth Amendments.[2]

For the Sixth and Fourteenth Amendments to serve as a bar to the admission of Young's communications with his pretrial counsel, however, Young's right to counsel under those constitutional provisions must have attached.  "[I]t has been firmly established that a person's

---

[2] Young's citation to the Fourteenth Amendment appears to be in reference to its incorporation of Sixth Amendment's right to counsel, and thus, its application to the States.  *See Gideon v. Wainwright*, 372 U.S. 335 (1963).

Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him . . . whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *United States v Gouveia*, 467 U.S. 180, 187–88 (1984) (quotation marks and citation omitted).  This differs from a person's right to have counsel present during a custodial interrogation, which works "to protect the Fifth Amendment privilege against self-incrimination rather than to vindicate the Sixth Amendment right to counsel." *Id.* at 188 n.5 (citations omitted).  *See also McNeil v. Wisconsin*, 501 U.S. 171, 176–80 (1991) (detailing the difference between the Sixth Amendment's right to counsel after adversarial proceedings have begun and the prophylactic right to counsel under the Fifth Amendment aimed at counteracting the pressures of a custodial interrogation).

Here, it is undisputed that Young's communications with his pretrial counsel took place *before* any formal adversarial proceedings began.  Young voluntarily arrived at the police station with his pretrial counsel on the evening the shooting occurred, November 29, 2018, at which time he made the incriminating statements to his pretrial

27

counsel and police. Young was not charged until December 2, 2018. (Register of Actions, p 1.) Therefore, irrespective of whether the communications between Young and his pretrial counsel were in fact protected under the attorney-client privilege and thus inadmissible, Young cannot show that the admission of those communications resulted in a violation of his right to counsel under the Sixth and Fourteenth Amendments. *See McNeil*, 501 U.S. at 176 ("Because petitioner provided the statements at issue here before his Sixth Amendment right to counsel . . . had been (or even could have been) invoked, that right poses no bar to the admission of the statements in this case.").

Even if Young could somehow show his Sixth Amendment right to counsel attached during the police interrogation, he is still not entitled to relief. While government interference with the attorney-client relationship may implicate a defendant's Sixth Amendment right to counsel, the claimant must show prejudice resulting from that intrusion. *Weatherford*, 429 U.S. at 550–59; *Sanborn*, 629 F.2d at 576; *see also Cluchette v. Rushen*, 770 F.2d. 1469, 1471 (9th Cir. 1985) ("[G]overnment interference with the confidential relationship between

28

a defendant and his counsel . . . violates the Sixth Amendment only when it substantially prejudices the defendant."). After explaining what portions of the interrogation video were admissible under the crime-fraud exception to the attorney-client privilege (i.e., Young and his pretrial counsel's discussion of Young deleting information from his cell phone), the Michigan Court of Appeals explained how the admission of the remaining conversation was not outcome-determinative:

> As noted, defendant also argues that the remainder of his conversation with pretrial counsel should have been redacted from the video. Assuming the evidence was improperly admitted, we still affirm. "A preserved error in the admission of evidence does not warrant reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Burns*, 494 Mich. 104, 110, 832 N.W.2d 738 (2013) (quotation marks and citation omitted). Stated differently, "nonconstitutional, preserved evidentiary errors are not grounds for reversal unless they undermined the reliability of the verdict." *Musser*, 494 Mich. at 363, 835 N.W.2d 319. "[T]he appropriate inquiry focuses on the nature of the error and assesses its effect in light of the weight and strength of the untainted evidence." *Lukity*, 460 Mich. at 495, 596 N.W.2d 607 (quotation marks and citation omitted). According to our Supreme Court, the burden of proving such is on defendant. *Id*.

> In arguing for reversal, defendant contends that the challenged portions of the video allowed the jury to hear incriminating statements about defendant's involvement in the victim's murder. Defendant is correct that he told

29

pretrial counsel he had just lied to the police about his original story. Defendant then informed pretrial counsel of a different version of events, which was the final version of the story he eventually told police. Pretrial counsel encouraged defendant to tell the truth to the police, and scolds him for lying to pretrial counsel before coming to the police station. Once the police come back to the room, defendant apologized for lying originally, and then relayed the new story, which he also told pretrial counsel.

Defendant does not contend the portions of his interrogation with police were inadmissible. Thus, the "untainted" evidence included all of the same incriminating statements defendant made to pretrial counsel. Defendant also made and signed a written statement, which contained nearly all of the same incriminating statements. Defendant's written statement was admitted at trial, and is not being challenged in this appeal. Therefore, regardless of whether the statements made by defendant that were potentially subject to the attorney-client privilege should have been admitted, the jury still would have heard all of the same information directly from defendant. Importantly, defendant's conversation with pretrial counsel between segments of the interrogation did not include any additional plan to lie to the police and did not contain more inculpatory information than he eventually told police. In fact, considering that the jury was privy to information that defendant told the exact same version of events to his attorney as he told to the police, the jury might have been more likely to believe defendant's claims of limited involvement in the shooting death of the victim. Defendant, in statements made both to pretrial counsel and the police, significantly limited his participation in the murder. Because the exact same evidence would have been admitted by defendant's undisputedly admissible statements to police, both oral and written, defendant's claim [that] he is entitled to a new trial because the video of his purportedly confidential statement to pretrial counsel was played to the

30

jury, lacks merit. *Lukity*, 460 Mich. at 497, 596 N.W.2d 607. Stated differently, defendant failed to meet his burden of showing "it is more probable than not that the error was outcome determinative." *Burns*, 494 Mich. at 110, 832 N.W.2d 738 (quotation marks and citation omitted). Consequently, reversal in this case is not warranted even if admission of the evidence was improper. *Id.*

*Young*, 2021 WL 6066786, at \*9.   In short, because Young conveyed the exact same information to police that he conveyed to his pretrial counsel, the admission of those communications at trial did not prejudice him.  Accordingly, Young cannot establish prejudice from the alleged intrusion into his attorney-client relationship, *Sanborn*, 629 F.2d at 576, nor can he show that the trial court's admission of his communications with his pretrial counsel resulted in fundamental unfairness, *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (holding that an evidentiary ruling "may violate due process and thus warrant habeas relief" when the ruling "is so egregious that it results in a denial of fundamental fairness").

In the same vein, the Michigan Court of Appeals' conclusion that the admission of Young's communications with his pretrial counsel was not outcome-determinative was not objectively unreasonable and is entitled to deference.  Where a state court finds that an error was

31

harmless, a habeas petitioner is not entitled to relief based on State trial court error unless he demonstrates that the error both "had [a] substantial and injurious effect or influence in determining the jury's verdict," *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993); *see also Holland v. Rivard*, 800 F.3d 224, 243 (6th Cir. 2015) *and* that the state court's harmlessness determination violated AEDPA.  *See Brown v. Davenport¸* 596 U.S. 118, 122 (2022). A showing of "substantial and injurious effect or influence" means "actual prejudice."  *Gover v. Perry*, 698 F.3d 295, 299 (6th Cir. 2012) (citing *Brecht*, 507 U.S. at 637).  This means that the habeas court is left in "grave doubt" over a matter so "evenly balanced" that the court concludes it is in a "virtual equipoise" as to the harmlessness of the error. *Davis v. Ayala*, 576 U.S. 257, 291 (2015) (Sotomayor, J., dissenting) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)).

In addition, where, as here, the state court addressed whether the alleged error was harmless, concluding that it was in fact harmless, that determination is also subject to AEDPA deference.  In other words, when a state court has ruled on the merits of a state prisoner's claim of error, a federal court cannot grant habeas relief without first applying

32

*both* the *Brecht* test for assessing the error's prejudicial effect *and* the test Congress enacted in AEDPA.  *Davenport¸* 596 U.S. at 122.

Here, just as Young cannot establish prejudice from the alleged intrusion into his attorney-client relationship, he cannot establish prejudice under *Brecht,* 507 U.S. at 623, nor has he shown that the Michigan Court of Appeals' harmlessness determination violated AEDPA, *Davenport¸* 596 U.S. at 122.  For these reasons, Young is not entitled to federal habeas relief on this claim.

> **C.    Young's challenge to the admission of Detective White's comments during the police interrogation is a state-law claim that is not cognizable on habeas review, and in any event, the state appellate court reasonably denied that claim.**

Young also argues the trial court abused its discretion by admitting portions of the police interrogation in which Detective White opined on Young's credibility—namely, Detective White accused Young of lying about the facts and circumstances surrounding the shooting. Young contends the admission of Detective White's comments resulted in unfair prejudice.  Not so.

As an initial matter, just like his evidentiary challenge to the admissibility of his communications with pretrial counsel in violation of

the attorney-client privilege, Young's challenge to the admissibility of

Detective White's comments is a matter of state law not cognizable on

federal habeas review.  *Estelle*, 502 U.S. at 67-68.  Young also fails to

show that the admission of Detective White's comments was "so

egregious that it result[ed] in a denial of fundamental fairness" so as to

warrant habeas relief.  *Bugh*, 329 F.3d at 512.  Rejecting Young's claim,

the Michigan Court of Appeals held that the admission of Detective

White's comments was not outcome-determinative and did not result in

prejudice, reasoning:

> Finally, defendant contends the trial court abused its discretion by admitting portions of the video of his interrogation where the officers aggressively question him and accuse him of lying. The prosecution contends the trial court properly admitted the evidence because it provided context to defendant's answers to questions asked by the police. The trial court determined that the aggressive questioning and confrontation was admissible as a valid interrogation technique. "An interrogator's questions are not ordinarily offered for the proof of the matter asserted; accordingly, the questions are typically not hearsay." *People v Clark*, 330 Mich App 392, 424, 948 N.W.2d 604 (2019), citing MRE 801(c). "Nevertheless, it may be proper for the trial court to redact an interrogator's question or statement when the statement is not relevant to providing context for the accused's answer or is otherwise excludable under MRE 403." *Clark*, 330 Mich App at 424-425, 948 N.W.2d 604, citing *Musser*, 494 Mich. at 354-359, 835 N.W.2d 319. Moreover, "[i]t is generally improper for a witness to comment or provide an opinion on the credibility of another

34

witness, because credibility matters are to be determined by the jury." *People v Dobek*, 274 Mich App 58, 71, 732 N.W.2d 546 (2007).

As noted, the prosecution contends Detective White's statements about defendant's credibility were included in the video because they provided context for an understanding of defendant's statements. In addressing a similar issue, our Supreme Court in *Musser*, 494 Mich. at 353-354, 835 N.W.2d 319, clarified that

> where the proponent of the evidence offers an interrogator's out-of-court statements that comment on a person's credibility for the purpose of providing context to a defendant's statements, the interrogator's statements are only admissible to the extent that the proponent of the evidence establishes that the interrogator's statements are relevant to their proffered purpose.

Further, "[e]ven if relevant, the interrogator's statements may be excluded under MRE 403 and, upon request, must be restricted to their proper scope under MRE 105." *Musser*, 494 Mich. at 354, 835 N.W.2d 319. Our Supreme Court insisted that, "to ensure a defendant's right to a fair trial, trial courts must vigilantly weed out otherwise inadmissible statements that are not necessary to accomplish their proffered purpose," noting that, "[t]o hold otherwise would allow interrogations laced with otherwise inadmissible content to be presented to the jury disguised as context." *Id.* (quotation marks and citation omitted).

Neither party undertakes significant analysis of the numerous times Detective White commented on defendant's credibility during the interview. While the prosecution generally asserts the comments provided context to defendant's statements, there is no serious attempt to explain the contextual value of even a single instance of Detective White accusing defendant of lying and being a liar.

35

We have reviewed the entire interrogation video and have found a significant number of comments about defendant's credibility made by Detective White. Once again, we believe the correct course is to assume the challenged portions of the video were improperly admitted, and to address whether the error was outcome-determinative. Because it clearly was not, reversal is not warranted.

Again, "[a] preserved error in the admission of evidence does not warrant reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *Burns*, 494 Mich. at 110, 832 N.W.2d 738 (quotation marks and citation omitted). The burden of proving outcome-determinative error is on defendant. *Lukity*, 460 Mich. at 495, 596 N.W.2d 607.

In the brief on appeal filed by defendant's counsel and in his Standard 4 brief, there is no assertion of any prejudice to the defense by the improper admission of Detective White's statements during the interrogation. Instead, the briefs merely note the comments invaded the jury's role of assessing credibility and state that defendant is entitled to a new trial. Defendant has not identified any of the comments specifically at issue, has not explained how they created prejudice, and has not analyzed the untainted evidence against the inadmissible remarks of Detective White. Having failed to even attempt to engage in such analysis, defendant clearly has failed to bear his burden of proving outcome-determinative error. *Lukity*, 460 Mich. at 495, 596 N.W.2d 607. Thus, on that ground alone, we would affirm. *Id.*

We also note, though, the record shows that, had defendant engaged in such analysis, it would have shown a lack of prejudice. Notably, defendant does not challenge his statements made to police during the interrogation where he repeatedly admits that his original story was a lie he created with his family to exculpate themselves. Defendant also acknowledges that his decision in that regard was

36

shortsighted and impaired his credibility. Defendant affirmed in his written statement that the original story told to police was a lie, created with the intent of saving Kenneth Gibson from suspicion. Consequently, even if Detective White's statements had been redacted from the video of the interrogation before it was played into evidence, the jury still would have been aware of defendant's understanding he originally lied to police and thereby undermined his credibility. Considering the similar evidence was admissible and untainted evidence, any allegation of outcome-determinative error by defendant would have been seriously undermined. *Id.*

Moreover, during trial, defendant moved the trial court to instruct the jury that Detective White's statements in the interrogation video were not evidence. The trial court obliged and read the following instruction to the jury before deliberations began: "The lawyers['] statements and arguments, the police officers['] statements during the video interview are not evidence. They are only meant to help you understand the evidence and each side's legal theories." It is axiomatic that, "[j]urors are presumed to follow the court's instructions, and instructions are presumed to cure most errors." *People v Mullins*, 322 Mich App 151, 173, 911 N.W.2d 201 (2017). Thus, the jury presumably heard the instruction from the trial court and followed the instruction to avoid considering Detective White's questions and comments as evidence of defendant's credibility or guilt. *Id.*

In sum, considering defendant stated he lied to police and acknowledged his credibility had been damaged in undisputedly admissible evidence, and the trial court instructed the jury to not consider Detective White's statements during the interrogation as evidence, the record does not support "it is more probable than not that the error was outcome determinative." *Burns*, 494 Mich. at 110, 832 N.W.2d 738 (quotation marks and citation omitted). Thus, despite the trial court's assumed error, reversal and a new trial is not warranted. *Id.*

37

*Young*, 2021 WL 6066786, at \*10–11.  This conclusion was not objectively unreasonable and is entitled to deference.  *Davenport¸* 596 U.S. at 122.  The prejudicial effect of Detective White's comments questioning Young's veracity and credibility was minimal.  Young admitted, both during the interrogation and in his written statement, that he lied to police about the shooting being in self-defense to protect the real shooter, his father.  Thus, as the Michigan Court of Appeals concluded, the jury would have been aware of defendant's impeached credibility even without Detective White's comments.  Further, the trial court instructed the jury not to consider Detective White's comments as evidence.  Given "jurors are presumed to follow their instructions," *Richardson v. Marsh,* 481 U.S. 200, 211 (1987), the Michigan Court of Appeals reasonably held that the admission of Detective White's comments was not outcome-determinative.  Therefore, Young cannot establish prejudice under *Brecht*, 507 U.S. at 623, nor has he shown that the Michigan Court of Appeals' harmlessness determination violated AEDPA, *Davenport¸* 596 U.S. at 122.

For these reasons, Young is not entitled to federal habeas relief on this claim.

**II.    The state appellate court reasonably denied Young's claim that he was deprived of his right to an impartial jury.**

Next, Young argues the trial court's failure to dismiss Juror AZ for cause violated his right to an impartial jury under the Sixth and Fourteenth Amendments.  Contrary to Young's arguments, he was not denied his right to an impartial jury, the Michigan Court of Appeals reasonably denied his claim, and he is not entitled to habeas relief.

**A.    The state appellate court's decision**

The Michigan Court of Appeals decided as follows on Young's claim that he was denied his right to an impartial jury:

### V. POTENTIAL BIAS OF JUROR

Defendant contends the trial court should have granted defendant's request to excuse Juror AZ for cause during jury selection. We disagree.

### A. STANDARD OF REVIEW

Generally, "[t]he decision to grant or deny a challenge for cause is within the sound discretion of the trial court." *People v Legrone*, 205 Mich App 77, 82, 517 N.W.2d 270 (1994) (quotation marks and citation omitted). "An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes." *People v Korkigian*, 334 Mich App 481, 489, 965 N.W.2d 222 (2020) (quotation marks and citation omitted). However, "once a party shows that a prospective juror falls within the parameters of one of the grounds enumerated in MCR 2.511(D), the trial court is without discretion to retain that juror, who must be excused

39

for cause." *People v Eccles*, 260 Mich App 379, 383, 677 N.W.2d 76 (2004). Generally, "[w]hether defendant was denied his [constitutional] right to an impartial jury . . . is a constitutional question that we review de novo." *People v Bryant*, 491 Mich. 575, 595, 822 N.W.2d 124 (2012).

## B. LAW AND ANALYSIS

The trial court did not abuse its discretion or impair defendant's right to a fair and impartial jury by denying defendant's for-cause challenge to a potential juror.

" '[T]he right to a jury trial guarantees to the criminally accused a fair trial by a panel of impartial "indifferent" jurors.' " *People v Jendrzewski*, 455 Mich. 495, 501, 566 N.W.2d 530 (1997), quoting *Irvin v Dowd*, 366 U.S. 717, 722, 81 S Ct 1639, 6 L Ed 2d 751 (1961). "[J]urors are presumed to be . . . impartial, until the contrary is shown." *People v Miller*, 482 Mich. 540, 550, 759 N.W.2d 850 (2008) (quotation marks and citation omitted). "A trial court ensures that a jury is impartial by conducting voir dire and removing biased jurors before impaneling the jury[.]" *People v. Haynes*, ___ Mich. App. ___, ___, ___ N.W.2d ___ 2021 WL 3573029 (2021), slip op. at 7. "The burden is on the defendant to establish that the juror was not impartial or at least that the juror's impartiality is in reasonable doubt." *Miller*, 482 Mich. at 550, 759 N.W.2d 850.

"MCR 6.412(D)(2) provides that if 'the court finds that a ground for challenging a juror for cause is present, the court on its own initiative should, or on motion of either party must, excuse the juror from the panel.' " *Miller*, 482 Mich. at 546, 759 N.W.2d 850. Three such grounds, under MCR 2.511(D)(2) through (4), are that the person "is biased for or against a party or attorney," or "shows a state of mind that will prevent the person from rendering a just verdict, or has formed a positive opinion on the facts of the case or on what the outcome should be;" and "has opinions or conscientious scruples that would improperly influence the

40

person's verdict[.]" "[T]o determine whether an error in refusing a challenge for cause merits reversal," this Court and our Supreme Court have established a "four-pronged test . . . ." *Legrone*, 205 Mich App at 81, 517 N.W.2d 270, citing *Poet v Traverse City Osteopathic Hosp*, 433 Mich. 228, 241, 445 N.W.2d 115 (1989). Specifically, reversal requires a "showing on the record that: (1) the court improperly denied a challenge for cause, (2) the aggrieved party exhausted all peremptory challenges, (3) the party demonstrated the desire to excuse another subsequently summoned juror, and (4) the juror whom the party wished later to excuse was objectionable." *Legrone*, 205 Mich App at 81, 517 N.W.2d 270, quoting *Poet*, 433 Mich. at 241, 445 N.W.2d 115.

Defendant contends Juror AZ's answers to certain questions during voir dire revealed an inherent bias regarding individuals accused of crimes, such as defendant in this case, and he is entitled to a new trial. Defendant's argument fails under *Legrone* because defendant did not use a peremptory challenge to excuse AZ, he did not use all of his peremptory challenges, he did not express a wish to peremptorily excuse other jurors, and he has not alleged any juror besides Juror AZ was objectionable. *Id*.

But, because defendant later contends that trial counsel was ineffective for failing to use a peremptory strike against Juror AZ, we will address the question of whether Juror AZ actually was biased.[3]

During voir dire, Juror AZ initially expressed a clear understanding of the prosecution's burden of proof and

---

[3] The Michigan Court of Appeals later rejected Young's ineffective-assistance claim regarding trial counsel's failure to use a peremptory strike against Juror AZ because Young failed to show that Juror AZ was actually biased against him; thus, Young failed to show prejudice. *Young*, 2021 WL 6066786, at *22. Young's habeas petition does not argue his trial counsel was ineffective for failing to exercise a peremptory challenge to remove Juror AZ.

41

asserted that he would find defendant "not guilty" if he were required to decide before any evidence was admitted. Juror AZ also agreed defendant did not have to prove anything during trial. Later, during questioning by defendant, Juror AZ gave concerning answers about the presumption of innocence, stating he did not believe defendant would be on trial if he had not done anything wrong. After being corrected, Juror AZ insisted he could be fair and impartial, and agreed he would not assume anything before hearing evidence.

Defendant thereafter moved to strike Juror AZ for cause, asserting "he admits that the defendant must be a little guilty or he wouldn't be here." The trial court denied counsel's request, stating, "I'm not going to excuse him for cause . . . ." Again, defendant did not use a peremptory strike to remove Juror AZ, so he remained on the jury.

We note that when Juror AZ was provided with simple, clear, and straightforward questions, his answers were likewise clear and showed no bias. However, as the parties engaged in further voir dire and asked more nuanced questions, Juror AZ's responses became less clear. Whether his apparent belief defendant must have done something wrong to be on trial was legitimate or a result of confusion, the outcome remains the same. Once Juror AZ was corrected regarding the burden of proof and presumption of innocence, he agreed he would not assume anything. He then stated he could be fair and impartial, verifying his previous claim in the same regard.[8]

---

[8] See MCL 768.10 ("The previous formation or expression of opinion or impression, not positive in its character, in reference to the circumstances upon which any criminal prosecution is based, or in reference to the guilt or innocence of the prisoner, or a present opinion or impression in reference thereto, such opinion or impression not being positive in its character, or not being based on personal

42

knowledge of the facts in the case, shall not be a sufficient ground of challenge for principal cause, to any person who is otherwise legally qualified to serve as a juror upon the trial of such action: Provided, That the person proposed as a juror, who may have formed or expressed, or has such opinion or impression as aforesaid, shall declare on oath, that he verily believes that he can render an impartial verdict according to the evidence submitted to the jury on such trial: Provided further, That the court shall be satisfied that the person so proposed as a juror does not entertain such a present opinion as would influence his verdict as a juror.").

Ultimately, after observing the voir dire, the trial court apparently believed Juror AZ's assertions that he would not assume defendant's guilt and could be fair and impartial. We "defer[ ] to the trial court's superior ability to assess from a venireman's demeanor whether the person would be impartial[.]" *People v Williams*, 241 Mich App 519, 522, 616 N.W.2d 710 (2000); see also MCR 2.517(C). After all, "[p]erhaps the most important criteria in selecting a jury include a potential juror's facial expressions, body language, and manner of answering questions," which are all things we are unable to observe on appeal. *Unger*, 278 Mich App at 258, 749 N.W.2d 272. Thus, we defer to the trial court's apparent assessment, *Williams*, 241 Mich App at 522, 616 N.W.2d 710, and rely on the trial court's determination that Juror AZ was not biased against defendant and would be a fair and impartial juror.

Our conclusion is buttressed by a published decision addressing a factually similar issue. In *People v Lee*, 212 Mich App 228, 249, 537 N.W.2d 233 (1995), this Court considered a claim the trial court erred by denying the defendant's for-cause challenge to a prospective juror who "express[ed] some concern about her ability to keep in mind that defendant was presumed innocent." The panel provided

43

the following reason for affirming the trial court's decision not to excuse the prospective juror for cause:

> Despite some concerns that it might be difficult for her to do so, [the prospective juror] assured the court that she could be fair, would follow the court's instructions, and would decide the case exclusively on the basis of the evidence.
>
> We find no error with the trial court's decision not to excuse [the prospective juror] for cause. [The prospective juror] did not indicate that she had a state of mind that would prevent her from rendering a just verdict. Nor did she possess opinions that would have improperly influenced the verdict. Rather, she stated— apparently credibly to the trial court—that she would decide the case consistent with the requirements of the law. The court therefore was not required to dismiss her for cause. [*Id.* (citations omitted).]

A similar analysis applies here. Pertinently, while Juror AZ "express[ed] concern about [his] ability to keep in mind that defendant was presumed innocent," he assured the trial court he could be fair and impartial and would not assume anything. *Id.* His understanding of his responsibility in that regard was further supported by his statement he would find defendant "not guilty," if he were required to render a verdict before any evidence was presented. If Juror AZ truly and inescapably believed defendant was guilty simply for being on trial, he would not have answered in such a manner. Thus, as in *Lee*, 212 Mich App at 249, 537 N.W.2d 233, the trial court in the present case did not abuse its discretion in concluding Juror AZ was not biased, and therefore, did not have to be stricken for cause.

Because defendant has not satisfied his burden of showing a biased juror served on his jury, he has failed to

44

present a legitimate claim his right to a fair and impartial jury was violated. *Miller*, 482 Mich. at 550, 759 N.W.2d 850.

*Young*, 2021 WL 6066786, at \*13–15. This determination was not objectively unreasonable.

## B. Clearly established federal law regarding the right to an impartial jury.

The Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant the right to be tried by an impartial and unbiased jury. *Morgan v. Illinois*, 504 U.S. 719, 726–28 (1992). Voir dire provides a mechanism for securing such a jury, "exposing possible biases, both known and unknown, on the part of potential jurors." *McDonough Power Equip., Inc., v. Greenwood*, 464 U.S. 548, 554 (1984); *see also Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981) ("Without an adequate voir dire the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled."). In seating a fair and impartial jury and rooting out any biased jurors, the trial court must assess the jurors' demeanor and credibility. *Wainwright v. Witt*, 469 U.S. 412, 428 (1985), citing *Patton v. Yount*, 467 U.S. 1025, 1036–38 (1984). Such determinations

45

are entitled to "special deference" even on direct review, and "the respect paid such findings in a habeas proceeding certainly should be no less." *Patton*, 467 U.S. at 1038.  On federal habeas review, the question "is plainly one of historical fact: did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed[?]" *Id.* at 1036.  Put differently, this Court must ask "whether there is fair support in the record for the state courts' conclusion that the jurors [ ] would be impartial." *Id.* at 1038.

### C. Analysis

Contrary to Young's arguments, Juror AZ was not biased, and the trial court's refusal to dismiss Juror AZ for cause did not deprive him of his Sixth Amendment right to an impartial jury.

When called from the venire, Juror AZ initially confirmed his understanding that the prosecution carried the burden of proof, that his role as a juror was to decide whether the prosecution proved its case beyond a reasonable doubt, and that the prosecution's failure to carry its burden would result in a not guilty verdict.  (08/27/2019 Trial Tr. at 142–43, 150.)  It was only when pressed by Young's trial counsel that

46

Juror AZ noted his belief that Young must have done something wrong, otherwise Young would not be on trial. (*Id.* at 154–55.) Young's trial counsel then explained to Juror AZ that he could not assume Young had done anything wrong simply by being on trial. (*Id.* at 155–56.) Juror AZ confirmed that he would not assume anything and that he would be fair and impartial. (*Id.* at 157.)

At worst, the exchange between Young's trial counsel and Juror AZ during voir dire indicates Juror AZ held preconceived notions as to Young's guilt. However, the Supreme Court has stated that

> [t]o hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Irvin v. Dowd*, 366 U.S. 717, 723 (1961). As a whole, Juror AZ confirmed he could set aside his preconceived notions that Young must have done something wrong because he was on trial and could instead render a fair and impartial decision that held the prosecution to its burden. The record therefore supports the trial court's conclusion that Juror AZ was not biased and the court's refusal to dismiss him for

cause.  As a result, the Michigan Court of Appeals reasonably denied

Young's claim that he was deprived of his right to an impartial jury,

and he is not entitled to habeas relief on that claim.[4]

---

[4] As an aside, Young is correct that federal law does not require him to use a peremptory challenge to unseat a juror the trial court refuses to excuse for cause.  (Pet. at 27.)  "[W]hen a defendant objects to a trial court's denial of his for-cause challenge, the defendant may choose to either remove the challenged juror peremptorily and forgo a later Sixth Amendment challenge, or allow the juror to sit, preserving the Sixth Amendment claim for appeal." *Wolfe v. Brigano*, 232 F.3d 499, 502 (6th Cir. 2000), citing *United States v. Martinez-Salazar*, 528 U.S. 304, 315 (2000).  In other words, the decision by Young's trial counsel not to exercise a peremptory challenge to excuse Juror AZ simply preserved his Sixth Amendment impartial-jury claim for review; it does nothing to alter the conclusion that Young was not denied that right.

## CONCLUSION

Young cannot be granted relief on a portion of Claim I (violation of Sixth Amendment right to counsel) because he has not exhausted it in the state courts as detailed above.

In any event, the state courts' rejection of Young's claims did not result in decisions that were contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts. Young was entitled to a fair trial, but "not a perfect one." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986); *see also United States v. Hasting*, 461 U.S. 499, 508–509 (1983) ("[T]here can be no such thing as an error-free, perfect trial" and the Constitution "does not guarantee such a trial.") The state-court decision in this case was not "so lacking in justification" that it resulted in "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. The formidable threshold for granting habeas relief has not been met because fairminded jurists could disagree on the correctness of the state court's decision. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). Consequently, habeas relief should be denied.

49

Additionally, the State opposes any requests for bond, oral argument, or any other relief, including a certificate of appealability. And the State asserts that Young is not entitled to habeas relief because he has not established that the alleged errors had a substantial and injurious effect on the verdict in this matter. *See Brecht*, 507 U.S. at 622.

The State also contends that Young has not demonstrated entitlement to discovery. Unlike typical civil litigants, "[h]abeas petitioners have no right to automatic discovery." *Johnson v. Mitchell*, 585 F.3d 923, 934 (6th Cir. 2009) (quoting *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001)). Rule 6(a) permits district courts to authorize discovery in habeas corpus proceedings under the Federal Rules of Civil Procedure only "for good cause." R. Governing 2254 Cases in the U.S. Dist. Cts. 6(a). "Rule 6 embodies the principle that a court must provide discovery in a habeas proceeding only 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.' " *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (quoting *Bracy v. Gramley*, 520 U.S. 899, 908–909 (1997)). "Rule 6 does not 'sanction

fishing expeditions based on a petitioner's conclusory allegations.' "
*Williams*, 380 F.3d at 974 (quoting *Rector v. Johnson*, 120 F.3d 551, 562
(5th Cir. 1997)); Habeas Rule 6(a). "Conclusory allegations are not
enough to warrant discovery under Rule 6; the petitioner must set forth
specific allegations of fact." *Williams*, 380 F.3d at 974 (internal
quotation marks and citation omitted). Young has not met this burden.

If this Court denies the petition, the State asserts that Young is
also not entitled to a certificate of appealability (COA) so as to proceed
further. In order to obtain a COA, a petitioner must make "a
substantial showing of the denial of a constitutional right." 28 U.S.C. §
2253(c)(2). To demonstrate this denial, the prisoner is required to show
that reasonable jurists could debate whether, or agree that, the petition
should have been resolved in a different manner, or that the issues
presented were adequate to deserve encouragement to proceed further.
*Slack v. McDaniel*, 529 U.S. 473, 483–484 (2000); *see also Miller-El v.*
*Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a
petitioner must sho[w] that reasonable jurists could debate whether (or,
for that matter, agree that) the petition should have been resolved in a
different manner or that the issues presented were adequate to deserve

51

encouragement to proceed further.") (internal quotation marks and citations omitted).

When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Slack*, 529 U.S. at 483–484, *see also Dufresne v. Palmer*, 876 F.3d 248, 254 (6th Cir. 2017) ("To meet *Slack*'s standard, it is not enough for a petitioner to allege claims that are arguably *constitutional*; those claims must also be arguably *valid* or *meritorious*.")

Likewise, when a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claims, a COA should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

When a plain procedural bar is present, and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.*, *see also Dufresne*, 876 F.3d at 254.

"At the end of the day, 'the gate keeping function of certificates of appealability [is to] separate the constitutional claims that merit the close attention of . . . this court from those claims that have little or no viability.'" *Dufresne*, 876 F.3d at 254 (quoting *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). Here, this Court should deny Young a COA on all of his claims. The claims simply "have little or no viability."

53

## RELIEF

For the reasons stated above, this Court should deny the petition.

The Court should also deny Young any requested discovery, evidentiary

hearings, bond, oral argument, and any other relief he seeks in this

action, including a certificate of appealability.

Respectfully submitted,

Dana Nessel
Attorney General

s/Nicholas Johnson

Assistant Attorney General
Criminal Appellate and Parole
Appeals Division
P.O. Box 30217
Lansing, MI  48909
(517) 335-7650
JohnsonN42@michigan.gov
P82810

Dated: July 17, 2024
2024-0395491-A/Answer/Young.Kenneth

54

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2024, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

HON. SHALINA D. KUMAR
MAG. JUDGE KIMBERLY G. ALTMAN
RAY E. RICHARDS, Attorney for Petitioner

Respectfully submitted,

Dana Nessel
Attorney General

s/Nicholas Johnson

Assistant Attorney General
Criminal Appellate and Parole
Appeals Division
P.O. Box 30217
Lansing, MI  48909
(517) 335-7650
JohnsonN42@michigan.gov
P82810

55